# SUPERIOR COURT

James L. Meenan
vs.                        }No.60046
United Electric Railways Co.

RESCRIPT.

July 18, 1925.

CAPOTOSTO, J. In an action to recover damages claimed to have been received by the plaintiff in a collision between a motor truck and an electric car of the defendant company at the junction of Snow and Washington Streets in the City of Providence, about 2 P. M. on January 18, 1924, the jury returned a verdict for the plaintiff and assessed damages in the sum of $1950. The defendant asks for a new trial on the usual grounds.

Snow Street runs into Washington Street from the south. At the southwest corner of Snow and Washington Streets is Brooks' Lunch Room. The entrances to this restaurant is located at the corner of the building and is recessed some few feet so as to give access to the premises from both streets. The opening at the corner of the building thus created by the door of the lunch room gives one coming through Snow Street towards Washington Street a diagonal view up Washington Street in a northwesterly direction. The defendant's inbound and outbound tracks are located in the center of Washington Street, which is about 40 feet wide from curb to curb.

In the afternoon of the day in question, the plaintiff, driving a truck for the American Railway Express, came out of Snow Street into Washington Street at a rate of about 10 miles an hour, intending to cross the southerly or inbound track and to proceed westerly up Washington Street. The southerly rail of the inbound track is some thirteen feet from the southerly curb of Washington Street. Along this curb and to the west of the plaintiff as he came out of Snow Street a number of automobiles were parked at the time of the accident. The collision occurred with an inbound car of the defendant company.

The plaintiff gave considerable testimony as to where he and the electric car were as he was approaching Washington Street through Snow Street. His estimated distances between fixed points are fairly close, but when he testifies to the location of moving objects, his ideas of distances and ability to see are at great variance with established facts and physical laws. One thing is certain and that is, that while he was still on Snow Street he

could and did see, on looking through the opening formed by Brooks' doorway and over the tops of the parked automobiles on the southerly side of Washington Street, an electric car coming in his direction. With this fact in mind he proceeded towards the approaching car without reducing his speed. He then further testified, first, that when he got beyond the parked automobiles into the roadway of Washington Street the electric car was thirty or forty feet away, and later, explaining that he had made an error in fixing this distance, definitely located the electric car about one hundred feet away when he reached a point in Washington Street beyond the line of parked automobiles. At this time the front of the truck was on the inbound track.

The electric car in question was a one man car, which the plaintiff claimed was moving at a rate of speed of between 15 to 18 miles an hour. He also said that in approaching him the motorman was looking to his right at a girl in a gray suit instead of watching the roadway. Under these conditions the plaintiff claims to have proceeded as far as the outbound track where he put on more gas and swung to his left in a westerly direction in an effort to avoid the car.

The testimony of the plaintiff's principal witness, one James E. McElroy, who was seated beside the plaintiff on the driver's seat, is similar in all material aspects, even to the motorman looking to his right at a "slim woman" who was standing near him. McElroy at the time of the trial had a pending suit against the defendant for injuries claimed to have been received by him in this same accident. The testimony of this witness is not worthy of belief. The very next day after the accident he gave a written statement to the defendant of what actually occurred. This statement is not only signed by him but is approved by his

writing the word "correct" opposite his signature. In this statement, introduced in evidence and marked defendant's Exhibit A, McElroy said, among other things, that the "truck had got well onto track when I first saw electric car, it was then about 4 feet away," and that the "motorman had his head sideways, apparently talking to a man standing back at edge of car body." The change from man to woman and of four feet to one hundred feet or more can be explained only on the ground of intentional misstatement for purely personal reasons and advantage.

The plaintiff's next witness was Dr. Thomas F. Mouringham. Dr. Mouringham's testimony was to the effect that while he was standing at the northeast corner of Washington and Aborn streets looking casually in the direction of Snow street, he saw an electric car pass him going towards Snow street at the usual speed; that there was no traffic at that particular time ahead of the car on Washington street; that the motorman was looking to his right probably watching for parked machines which might turn out in his path; that he did not see the truck come out of Snow street; that he first saw the truck when it came by the front of the car, and that from the time he first saw the truck and the actual collision, it was a very short time, which interval he illustrated by a clap of his hands.

As a result of this accident the plaintiff claimed as his main injury a sprained back with a dislocation at the spine of the fourth, fifth, sixth, seventh and eighth ribs on the right side, the fifth and tenth on the left side, and the ninth and tenth ribs on the right side broken near the spine. Dr. Mouringham, who attended him, said that he reduced the dislocation by pressure and strapped his patient with adhesive plaster. Dr. Farrell, interpreting an X-ray plate taken by himself, claimed that the photograph

showed a break of the ninth and tenth ribs close to the spine.

On the question of liability the defendant's version of the occurrence in substance is that when the electric car, proceeding at a slow speed, was at or in the immediate vicinity of Brook's Restaurant, the plaintiff's truck came out of Snow street at a speed of some ten to twelve miles an hour; that it cut the corner sharply, heading in the direction of the electric car, which was then only a few feet away; that the motorman immediately reversed his power to the discomfort and probable injury of his passengers, and that when the impact actually occurred, the electric car was almost stopped. The motorman testified that as he proceeded down Washington street towards Snow street, he did glance a number of times to his right on account of the automobiles which were parked along the southerly side of Washington street and which might at any time pull out in front of him. These facts were sworn to by numerous witnesses, including employees of the defendant company, passengers on the electric car, and other disinterested observers. According to all these witnesses, the "girl in the gray suit" of the plaintiff, or the "slim woman" or man of McElroy, to whom the motorman is, according to them, supposed to have been looking, was non-existent.

As to the injuries, Dr. William B. Cutts said that the dislocation of the ribs, as testified to, was an impossibility and that if such an injury had in fact been received the plaintiff would be a cripple, partially paralyzed at least, at the present time. Dr. Isaac Gerber, interpreting Dr. Farrell's X-ray plate, testified positively that there was no indication of any fracture of the ninth and tenth ribs near the spine.

The plaintiff's case, when viewed in the light of all attending circumstances, presents the picture of a motor vehicle driver plunging heedlessly in the path of a known or potential danger, suffering some injury through his own recklessness, and then attempting to convince himself and others through a process of imaginative reconstruction that he has been damaged through the negligent conduct of another. The plaintiff's claim of the injuries alleged to have been sustained does violence to ordinary common sense.

While the plaintiff has succeeded in showing that his case is in great part based upon imagination and exaggeration, he has not established by testimony worthy of any credence either that at the time of the accident he was in the exercise of due care or that the defendant company was negligent.

Motion for new trial granted.

For Plaintiff: Quinn, Kernan & Quinn.

For Defendant: Alonzo R. Williams.